**SOUTHLAND TELEVISION COMPANY,**
Appellant,

v.

**FEDERAL COMMUNICATIONS COM-
MISSION, Appellee,**
Shreveport Television Company,
Intervenor.

**No. 14487.**

United States Court of Appeals
District of Columbia Circuit.

Argued March 19, 1959.

Decided April 16, 1959.

Petition for Rehearing In Banc Denied
May 20, 1959.

Mr. W. Ervin James, Houston, Tex., for appellant.

Mr. John Conlin, Counsel, Federal Communications Commission, with whom Messrs. John L. Fitzgerald, General Counsel, Federal Communications Commission, and Richard A. Solomon, Asst. Gen. Counsel, Federal Communications Commission at the time the brief was filed, were on the brief for appellee.

Mr. James T. Brennan, Jr., Counsel, Federal Communications Commission, also entered an appearance for Federal Communications Commission.

Mr. Henry B. Weaver, Jr., with whom Mr. Quinn O'Connell, Washington, D. C., was on the brief, for intervenor.

Before EDGERTON, BAZELON and BASTIAN, Circuit Judges.

BASTIAN, Circuit Judge.

Appellant, Southland Television Company (Southland), Shreveport Television Company (Shreveport) and Station KRMD filed mutually exclusive applications for a permit to construct and operate a television station on Channel 12 in Shreveport, Louisiana. After a comparative hearing, the hearing examiner rec-

ommended that the application of Shreveport be granted. Exceptions to the examiner's report were duly filed and oral argument held, after which the Commission released its final decision granting the application of Shreveport.

After concluding that there were no preferences in the matters of program proposals, cooperation by community organizations, and proposals relating to staffs, studios, equipment and other facilities, the Commission found that Shreveport offered the greatest assurance that program commitments would be effectuated and that community needs would be met; and further found that preference should be awarded to Shreveport in the area of diversification and concentration in the ownership and control of media of mass communication. Although in the other respects there were no significant differences between the applications, in no single aspect was Southland preferred.

In connection with its findings, the Commission stated that "greatest weight" was attached to the fact that Mr. Don George, a 43% partner in Shreveport, would participate in the day to day operations of the station, using the following language:

"Based upon all of the foregoing, we conclude that substantial assurance exists that Shreveport Television's program commitments will be effectuated and community needs met. In arriving at the foregoing determination, we attach greatest weight to the fact that a 43% partner with a good record of local residence and civic activity will have full charge of the day-to-day operations of the station. Although, Mr. George has had no radio or television experience, we have been directed to no evidence detracting

from the presumptions which arise from his identification with the locality and from his proposed integration. Lesser weight is accorded the proposed participation of the other three partners, although on the whole, the plans for these partners are encouraging."

After denial of its petition for reconsideration of the decision of the Commission, Southland appealed.[1] While the appeal was pending Mr. George died, and on October 2, 1956 this court entered the following order:

"This case came on for consideration on appellant's motion to remand for further proceedings before the Federal Communications Commission, and was argued by counsel.

"Upon consideration whereof it is Ordered by the Court that the decision of the Federal Communications Commission entered herein on May 20, 1955, be, and it is hereby, vacated, and that this case be, and it is hereby, remanded to the Commission with directions to reconsider its decision in the light of the circumstances that, by reason of the death of Mr. Don George, the fact to which the Commission attached greatest weight, no longer exists."

Prior to its determination of the case on remand, and on January 15, 1957, the Commission issued a regular license to Shreveport to operate the station. On July 1, 1957, without having reopened the record, although requested so to do by Southland,[2] the Commission released its decision reappraising the case in the light of Mr. George's death, and concluded that notwithstanding Mr. George's death Shreveport was still the better qualified applicant. Rehearing having been denied, this appeal followed.

---

1. The third applicant [KRMD] did not appeal. Although the station apparently attempted to intervene in the proceedings on remand, the Commission concluded that its application had been abandoned and KRMD was no longer a party to the proceedings. No appeal was taken by KRMD.

2. Although Southland moved to reopen the record on remand, it did not, either in its motion or after denial thereof, make a tender of what it expected to develop at the reopened hearing.

688

The Commission, in its July 1, 1957 decision, pointed out that its original decision was based on three primary areas of comparison; that with two exceptions the applicants were found to be equal. It further pointed out that this original decision was based on (1) assurances as to effectuation of program proposals and of continuing operation in the public interest, as to which Shreveport had been awarded a substantial preference over Southland; and (2) diversification of control of mass media of communication, as to which Shreveport was accorded a lesser preference over Southland. The Commission concluded:

"A reevaluation of the showing of the parties in these areas as affected by the death of Mr. George shows that: (1) no preference is to be found as regards the proposals advanced herein; (2) Shreveport Television retains its preference although in lesser degree as to probability of effectuation of program proposals and of a continuing operation in the public interest; and (3) Shreveport Television retains its preference, now a strengthened one, on the diversification of control of mass media of communications. Thus, although the circumstance of Don George's death alters the emphasis of our decision of May 19, 1955, the essential validity of that decision remains unimpaired." [3]

We are unable to say that there was no substantial basis for the Commission's findings. Although the Commission did not reopen the record to take new evidence on the effect of Don George's death, there was on record before the Commission the Shreveport partnership agreement providing for continuation of the partnership in the event of the death of a partner and specifically providing that, in case of Mr. George's death, the remaining partners would appoint his successor as station manager and would circumscribe his duties and authority. Despite this, petitioner, as we have noted above, in seeking a further evidentiary hearing, made no proffer of evidence to be evoked which would have impaired the validity of the Commission's determination. Considering the record as a whole, therefore, we are not convinced that the Commission's order should now be set aside.

We think, however, that we should say a word concerning the granting of the license to operate (order of January 15, 1957). It would have been better practice had that order reflected the pendency of the review proceedings; and we suggest that any similar future order contain the condition that it shall be void if the construction permit is ultimately denied. The issuance of the January 15, 1957 order, under the circumstances in this case, is, however, no ground for reversal. Had we reversed the decisions and orders of the Commission in this case, and had a construction permit ultimately issued to Southland or any other applicant, the absence, in Shreveport's license to operate, of such a condition as mentioned above would not have adversely affected the successful applicant, since Shreveport's license would have become invalid.

Affirmed.

3. On July 31, 1957, KRMD and Southland filed petitions for reconsideration of the July 1 opinion and order. In its April 25, 1958 report and order denying these petitions, the Commission modified its position somewhat with respect to the increased preference it had accorded Shreveport in the area of diversification of control of mass media of communication. It pointed out that the strengthening of the preference had stemmed from the Commission's assumption that, while Don George's interest in the radio station had passed to his widow, his interest in a chain of motion picture houses had not. In its April 25th order, the Commission recognized that, since the disposition of the movie interests were not a matter of record, this assumption might be unwarranted. It concluded that in any event this preference continued as strong as that originally accorded Shreveport, and affirmed its former opinion as to the over-all superiority of Shreveport.